**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tanya M. Maneri,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-23-08054-PCT-DGC<br><br>**ORDER** |

Plaintiff Tanya Maneri seeks judicial review of the final decision of the Commissioner of Social Security, which denied her claim for disability insurance benefits. For reasons stated below, the Court will affirm the decision.

**I.     Background.**

Plaintiff stopped working as a flight attendant in 2014 due to back pain and difficulty standing and walking. Administrative Transcript ("Tr.") 28, 45-46, 1160. In February 2014, Plaintiff had surgery to remove a Tarlov cyst from her lower spine. Tr. 423-43.[1] Plaintiff received pain management treatment from various medical providers over the next several years. Tr. 20-23. In September 2019, she had a spinal cord stimulator placement to relieve chronic back and leg pain. Tr. 794-800.

---

[1] Tarlov cysts are fluid-filled sacs in the nerve roots of the spinal cord that can cause low back pain, sciatica, headaches, and loss of feeling in the lower extremities. *See* Doc. 12 at 3 n.5; National Institute of Neurological Disorders and Stroke, *Tarlov Cysts*, https://www.ninds.nih.gov/health-information/disorders/tarlov-cysts (last visited Jan. 23, 2023).

Plaintiff filed her social security claim in March 2017, alleging a disability date of February 8, 2014.  Tr. 295-98.  The claim was denied by state agency physicians at the initial and reconsideration levels.  Tr. 63-100.  Plaintiff and a vocational expert testified at a hearing before an Administrative Law Judge ("ALJ") on November 22, 2021.  Tr. 37-62. The ALJ issued a written decision denying the claim on January 6, 2022.  Tr. 10-36.  This became the Commissioner's final decision when the Appeals Council denied review on January 30, 2023.  Tr. 1-6.

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Doc. 1.  The parties briefed the issues after receipt of the certified administrative transcript. Docs. 8-9, 12, 14-15.  Because the ALJ's decision is not based on harmful legal error and is supported by substantial evidence, the Court will affirm it.

## II.     Standard of Review.

The Court reviews only those issues raised by the party challenging the ALJ's decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may vacate the decision only if it is based on legal error or is not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion.  *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In determining whether substantial evidence supports the ALJ's decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  And where "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**III.   Disability and the Five-Step Evaluation Process.**

Under the Social Security Act, a claimant for disability insurance benefits must establish disability prior to the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Whether the claimant is disabled is determined by a five-step process. The claimant must show that (1) she has not engaged in substantial gainful activity since the alleged disability date, (2) she has a severe impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") – the most she can do with her impairments – precludes her from performing past work. If the claimant meets her burden at step three, she is presumed disabled and the process ends. If the inquiry proceeds and the claimant meets her burden at step four, then (5) the Commissioner must show that the claimant is able to perform other available work given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996).[2]

Plaintiff has met her burden at steps one and two – she has not engaged in substantial gainful activity since the alleged disability date of February 8, 2014 and her date last insured of December 31, 2019, and she has two severe impairments: Tarlov cysts and headaches. Tr. 15.[3]

The ALJ found at step three that Plaintiff's impairments do not constitute a listed impairment. Tr. 18. Plaintiff does not challenge this finding.

---

[2] An impairment is "severe" if it significantly limits the ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include physical functions such as sitting, standing, walking, lifting, carrying, and reaching. 20 C.F.R. § 404.1522(b).

[3] The ALJ found Plaintiff's anxiety to be non-severe because it would have no more than a minimal effect on her ability to work. Tr. 16-18; *see* 20 C.F.R. § 404.1522(a). The ALJ considered Plaintiff's anxiety in determining her RFC at step four. Tr. 16.

The ALJ determined at step four that Plaintiff had the following RFC through the date last insured:

> [T]he claimant had the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant (1) could occasionally climb stairs and ramps; (2) could never climb ladders or scaffolds; (3) could occasionally stoop, kneel, crouch and crawl; (4) could occasionally operate foot controls with the bilateral lower extremities; and (5) must have avoided concentrated exposure to slippery, wet surfaces and hazards such as unprotected heights and moving mechanical parts.

Tr. 18. The ALJ found that this RFC precluded Plaintiff from performing her past work as a flight attendant because she is limited to sedentary work. Tr. 28.[4]

Based on Plaintiff's RFC, relevant vocational factors, and testimony from the vocational expert, the ALJ determined at step five that Plaintiff could perform the jobs of document preparer and table worker. Tr. 28-29. The ALJ therefore found Plaintiff not disabled within the meaning of the Social Security Act. Tr. 29.

**IV.    Discussion.**

Plaintiff contends that the ALJ erred in rejecting Dr. Keith Cunningham's opinion and Plaintiff's symptom testimony. Docs. 12, 15. Defendant argues that the ALJ committed no harmful legal error and her decision is supported by substantial evidence. Doc. 14.

**A.    Medical Opinion Evidence.**

The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments[.]" 20 C.F.R. § 404.1527(a)(1). Under the applicable regulations, the ALJ generally should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. 20 C.F.R.

---

[4] To determine the physical requirements of work in the national economy, the Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. Sedentary work involves sitting with occasional standing or walking (up to two hours), lifting no more than 10 pounds, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

§ 404.1527(c); *Andrews*, 53 F.3d at 1040-41. Where there are conflicting medical opinions, as in this case, the ALJ may reject an examining physician's opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830; *see Murray v. Heckler*, 722 F.2d 499 (9th Cir. 1983). "Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings." *Lisa L. v. Kijakazi*, No. 1:20-CV-494-SI, 2021 WL 3663068, at *8 (D. Or. Aug. 18, 2021) (citations omitted). The ALJ can meet "the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)); *see Magallanes*, 881 F.2d at 751.[5]

The ALJ thoroughly discussed the medical evidence of record, including Plaintiff's surgery to remove the Tarlov cyst, her post-operative treatment and pain management, clinical findings based on physical exams and imaging scans (CT scans, MRIs, and EMGs), placement of the spinal cord stimulator, and opinions from all medical sources. Tr. 20-27. The ALJ gave no weight to the state agency physicians' opinions because they assess the sufficiency of the evidence rather than Plaintiff's functional abilities. Tr. 25. The ALJ rejected the opinion of Lisa Santiago, a nurse practitioner at a pain management clinic (Tr. 25-26), but Plaintiff does not challenge this finding (Doc. 12 at 8 n.6). The ALJ found Dr. Cunningham's opinion to be partially persuasive. Tr. 26. Plaintiff contends that this was error. Doc. 12 at 10-16. The Court does not agree.

At the request of Plaintiff's counsel, Dr. Cunningham performed a consultative examination of Plaintiff in November 2021. Doc. 12 at 8; Tr. 1159-65 (Ex. 36F). Plaintiff

---

[5] The rules for evaluating opinion evidence changed effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). For claims filed after that date, ALJs no longer give specific evidentiary weight to any medical opinion. 20 C.F.R. § 404.1520c(a). The new rules do not apply in this case because Plaintiff filed her claim on March 7, 2017. Tr. 295.

reported pain and muscle spasms in the right buttocks and hamstring, which worsen if she stands more than six to eight hours. Tr. 1160-61. Plaintiff stated that she avoids heavy lifting, which she estimated at 40 pounds, and has daily fatigue from chronic pain. She reported headaches several times a week for which she receives treatment as needed. She also reported being independent with daily activities. Tr. 1161.

The physical exam was largely unremarkable. Plaintiff was able to stand and walk, but had some discomfort in her lower back while standing on her heels and toes. Plaintiff's hips, knees, and ankles moved normally, and straight leg raises were negative in the sitting and supine positions. Plaintiff had functional range of motion in her cervical spine, shoulders, elbows, wrists, and hands. She had normal muscle tone and bulk with 5/5 strength throughout her body. Sensation was intact to vibration and touch. Her joints showed no signs of inflammation. She was able to squat and lean forward 90 degrees, but reported some pain when doing so. Her cranial nerves were intact and her head was atraumatic. Tr. 1162-63.

Dr. Cunningham completed a check-box form regarding Plaintiff's ability to do work-related activities. Tr. 1164-65. He opined that during an eight-hour workday Plaintiff could sit more than three hours but less than four hours, stand and walk more than two hours but less than three hours, lift and carry 15 to 30 pounds, occasionally bend and stoop, and frequently reach. Tr. 1164. He further opined that Plaintiff would have mild cognitive and pace limitations, would need to alternate positions every 46-60 minutes, and would be absent from work two to three days a month. Tr. 1165.

The ALJ gave only some weight to Dr. Cunningham's opinion because it (1) is based on a one-time examination of Plaintiff, (2) does not include a rationale for assessed limitations, (3) is not entirely consistent with the results of the examination, and (4) is only partially consistent with the longitudinal record. Tr. 26; *see* Doc. 12 at 11.

**1.     Dr. Cunningham's Status as an Examining Physician.**

Plaintiff asserts that the ALJ's reliance on Dr. Cunningham's status as an examining physician does not, by itself, serve as a legitimate reason to discount his opinion. Docs. 12

at 11-12, 15 at 4.  But as Plaintiff notes, the ALJ partially "rejected [Dr. Cunningham's] opinion for other reasons beyond [him] providing a one-time examination."  *Gonzales v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02411-PHX-JAT, 2022 WL 872629, at *3 (D. Ariz. Mar. 24, 2022).  And the fact that Dr. Cunningham's opinion is based on a single examination is relevant in determining the amount of weight to which the opinion is entitled.  20 C.F.R. § 404.1527(c)(2)(i); *Lopez v. Colvin*, 194 F. Supp. 3d 903, 917 (D. Ariz. 2016).  "[T]he opinions of a doctor who conducts a one-time examination generally are entitled to less weight than are the opinions of treating sources, who . . . 'may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of . . . consultative examinations.'"  *Hunt v. Berryhill*, No. 16-cv-00313-JCS, 2017 WL 1177981, at *8 (N.D. Cal. Mar. 30, 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* § 404.1527(a)(2) ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.").

      The ALJ did not err by relying in part on Dr. Cunningham's status as a one-time examining consultant.  *See Sydney N. v. Kijakazi*, No. 2:22-CV-00234-MKD, 2023 WL 7276481, at *5 (E.D. Wash. Nov. 3, 2023) ("The ALJ considered Dr. Severinghaus' opinion but gave it less weight in part because it was based on a one-time examination.  As this was not the only supported reason the ALJ gave to reject the opinion, . . . the ALJ reasonably gave the opinion less weight due to it being based on a one-time examination."); *Aragonez v. Comm'r of Soc. Sec.*, No. 1:23-CV-00723-EPG, 2023 WL 7527066, at *5 (E.D. Cal. Nov. 13, 2023) ("[T]he ALJ took issue with Dr. Sharma's limitation of Plaintiff to two hours of standing and walking but agreed with the limitation to light work.  In rejecting the standing and walking limitations, the ALJ properly considered the fact that the opinion was based on a single examination, which goes to supportability."); *Alfaro v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02053-PHX-GMS, 2022 WL 6534254, at *6 (D. Ariz. Feb. 23, 2022) ("Although the one-time nature of a consultative examiner's

7

evaluation is not a sufficient reason on its own to reject the examiner's opinion, the ALJ provided additional valid reasons to reject Dr. Hassman's opinion[.]"); *White v. Kijakazi*, No. 21-35756, 2022 WL 6649616, at *2 (9th Cir. Oct. 11, 2022) (affirming the ALJ's finding of non-disability where the ALJ "noted that Drs. Lemberg and McCollum were one-time examiners.") (citing 20 C.F.R. § 404.1527(c)).

### 2.     Dr. Cunningham's Rationale for Certain Limitations.

Plaintiff challenges the ALJ's statement that Dr. Cunningham's opinion does not include a rationale for assessed limitations. Docs. 12 at 12-13, 15 at 4. The ALJ specifically noted that "there is no explanation as to why [Plaintiff] requires positional changes or would be absent from work 2 to 3 days a month." Tr. 26. Plaintiff does not identify any explanation Dr. Cunningham provided for these limitations and instead asserts that his opinion is based on the examination of Plaintiff and review of her medical records. Docs. 12 at 12-13, 15 at 4-5.[6]

"The Ninth Circuit has held that insufficiently explained opinions could be rejected and recently upheld that ruling. 'An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion.'" *Hope D. v. Kijakazi*, No. 1:23-CV-3076-TOR, 2023 WL 8599703, at *6 (E.D. Wash. Dec. 12, 2023) (quoting *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)); *see Torrecillas v. Comm'r of Soc. Sec.*, No. 1:21-CV-01703-SAB, 2023 WL 1420566, at *10 (E.D. Cal. Jan. 31, 2023) ("The Ninth Circuit has made clear that an ALJ may discount an unexplained check-the-box form opinion that does not contain any explanation of the basis of its conclusions, or that is unsupported or inconsistent with the treatment records from that medical provider.") (citing *Ford*, 950 F.3d at 1155); *Orn*, 495 F.3d at 631 ("[F]actors relevant to evaluating any medical opinion . . . include the amount of relevant evidence that supports the opinion and the quality of the explanation

---

[6] Dr. Cunningham noted that he had reviewed Plaintiff's medical records, citing generally Exhibits 1F through 23F, but he cited no specific record or clinical finding to support his assessed limitations. Tr. 1164-65.

8

provided[.]"); 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The ALJ did not err in considering the quality of explanation Dr. Cunningham provided for his assessed limitations. *See Weiss v. Kijakazi*, No. 22-35557, 2023 WL 4030839, at *1 (9th Cir. June 15, 2023) ("These opinions were in check-box form and were not accompanied by explanation or narrative. Because these opinions contained little in terms of 'objective medical evidence and supporting explanations,' the ALJ reasonably found them unpersuasive."); *Reynolds v. Kijakazi*, No. CV-22-08098-PHX-JAT, 2023 WL 4516157, at *6 (D. Ariz. July 13, 2023) ("[A]lthough a medical provider is not required to tie specific evidence to specific limitations, those that do will receive more weight for their opinions. Here, the ALJ found that Dr. Jetly 'did not indicate the specific evidence he relied on in forming each portion of his opinions.' While Dr. Jetly may have provided some general explanation, the fact that he was not more specific in his opinion was a valid reason for the ALJ to give it little weight.") (citation omitted).

### 3. Inconsistencies with the Examination.

Plaintiff also challenges the ALJ's finding that Dr. Cunningham's opinion is not entirely consistent with the results of the examination. Docs. 12 at 13, 15 at 5. Plaintiff notes that Dr. Cunningham was not required to explain every limitation on his check-box form for his opinion to be valid. *Id.* While this is true, the ALJ identified specific limitations that find no support from the examination.

Dr. Cunningham opined that Plaintiff has cognitive and pace limitations and would be off-task to a mild degree, but "there was nothing in the examination showing impairment in cognition or pace." Tr. 26. Dr. Cunningham opined that Plaintiff can only frequently reach, "but the examination showed normal range of motion of the upper extremities, normal range of motion of the cervical spine and normal muscle strength." *Id.* And Dr. Cunningham's opinion that Plaintiff can stand and walk for less than three hours in a workday is inconsistent with her statement that "she could stand for 6 to 8 hours in a day, although that increased her pain symptoms." *Id.*

The ALJ did not err in finding that the basis for these opinions was unclear. *Id.*; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[Dr. Tobin's] notes, and the doctor's other recorded observations and opinions regarding Bayliss's capabilities, contradict Dr. Tobin's statement assessing Bayliss's ability to stand or walk. Such a discrepancy is a clear and convincing reason for not relying on the doctor's opinion regarding Bayliss's limited ability to stand and walk."); *Kapp v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04565-PHX-SMB, 2021 WL 118540, at *3 (D. Ariz. Jan. 13, 2021) ("The inconsistencies the ALJ found between Dr. Saperstein's medical examinations and his reports of Plaintiff's symptoms and limitations are a specific and legitimate reason for giving little weight to Dr. Saperstein's opinion and are supported by substantial evidence."); *Lopez v. Colvin*, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *11 (E.D. Cal. July 8, 2014) (finding that the ALJ did not err in giving little weight to a physician's opinion because "it was internally inconsistent [and] completed largely on a check box form with very little explanation").[7]

### 4. Inconsistency with the Longitudinal Record.

The ALJ found Dr. Cunningham's opinion to be "only partially consistent with the longitudinal record, which shows [Plaintiff] has chronic pain related to her history of Tarlov cysts but her pain is improved with medications and the spinal cord stimulator." Tr. 26. Plaintiff asserts that the ALJ's "plucking of isolated notes of improvement" fails to invalidate Dr. Cunningham's assessed limitations. Doc. 12 at 14. But Plaintiff does not dispute that her pain improved with medication and the spinal cord stimulator, and the ALJ identified specific treatment records that demonstrate as much. For instance, Plaintiff reported in October 2014 that her prescribed medication was effective in controlling her pain and improving her functioning by more than 50 percent. Tr. 21 (citing Tr. 512); *see also* Tr. 577 (stating that her pain is "fairly well controlled"); 618 ("relatively stable on her

---

[7] Plaintiff asserts that her candid report that she could stand for six to eight hours does not support a finding that she is able to work on a sustained basis. Doc. 15 at 5. But Plaintiff's ability to stand for six to eight hours is inconsistent with Dr. Cunningham's limitation to less than three hours of standing. Tr. 1164. The ALJ did not err in so finding. Tr. 26.

10

current medication"); 622 (medications are "working fairly well"); 664 ("pain in lower extremities has improved"). In July 2019, Plaintiff reported "100% improvement of her pain" from the trial stimulator, and after placement of the permanent stimulator in September 2019 she was "doing well" and could "resume normal activities." Tr. 23 (citing Tr. 757, 802). In November 2019, Plaintiff stated that she did not need as much pain medication because the stimulator was "helping a lot." Tr. 26 (citing Tr. 821). In February 2021, while continuing to use the stimulator, Plaintiff rated her low back discomfort "between 2 and 5/10 without any radicular components." Tr. 25 (citing Tr. 1128).

Plaintiff notes that other treatment records are consistent with Dr. Cunningham's assessed limitations because they show that she continues to have chronic pain. Doc. 12 at 14-15. But the ALJ's conclusion must be upheld where a rational interpretation of the evidence supports the ALJ's decision. *Thomas*, 278 F.3d at 954. Plaintiff essentially asks the Court to overrule the ALJ's rational conclusion. The Court declines to do so. *See Jaime v. Kijakazi*, No. 1:21-CV-01672-SKO, 2023 WL 2466196, at *11 (E.D. Cal. Mar. 10, 2023) ("Plaintiff appears to be advocating for an alternative interpretation of the evidence regarding how pain affected his ability to use the left upper extremity. The Court will not second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff."); *Juarez v. Colvin*, No. CV 13-2506 RNB, 2014 WL 1155408, at *2 (C.D. Cal. Mar. 20, 2014) ("It is not the Court's role to second-guess an ALJ's rational interpretation of the evidence merely because plaintiff is able to proffer an alternative rational interpretation."); *Stratton v. Astrue*, No. C07-5555RBL, 2008 WL 2262025, at *3 (W.D. Wash. May 30, 2008) ("Plaintiff argues for a more favorable interpretation of the medical evidence. However, the ALJ's interpretation was reasonable and properly supported. 'When the evidence before the ALJ is subject to more than one rational interpretation, the court must defer to the ALJ's conclusion.'") (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)).

And contrary to Plaintiff's suggestion (Doc. 12 at 15), the ALJ's decision to afford only some weight to Dr. Cunningham's opinion easily "clear[s] the low substantial

evidence bar." *Ford*, 950 F.3d at 1159; *see Biestek*, 139 S. Ct. at 1154, 1157 (the "substantial evidence" threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close"); *Esparza v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00142-PHX-DJH, 2021 WL 527378, at *6 (D. Ariz. Feb. 12, 2021) ("Because substantial evidence is a relatively low evidentiary threshold, the ALJ's conclusion is entitled to deference"); *Minnifield v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00913-PHX-MTL, 2021 WL 100105, at *3 (D. Ariz. Jan. 12, 2021) ("Ultimately, the evidence on [the] issue [of improvement with treatment] points in either direction.  Because substantial evidence is a relatively low evidentiary threshold and highly deferential, the ALJ's interpretation of the evidence was reasonable.") (citation omitted).

Plaintiff contends the ALJ impermissibly relied on her own medical judgment in giving only some weight to Dr. Cunningham's opinion and determining the RFC.  Doc. 12 at 15-16.  But it is "the responsibility of the ALJ, not the claimant's physician, to determine [RFC]." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  "That determination is made 'based on all of the relevant medical and other evidence,' 20 C.F.R. § 404.1545(a)(3), and in doing so the ALJ must 'evaluate the persuasiveness of medical opinions,' 20 C.F.R. § 404.1520c(a)[.]" *Tansy v. Comm'r of Soc. Sec. Admin.*, No. CV-21-1873-PHX-SMB (JFM), 2022 WL 16752321, at *9 (D. Ariz. Sept. 22, 2022).

That is what the ALJ did here in concluding that Dr. Cunningham's opinion does not include a rationale for certain limitations and is not entirely consistent with the examination results and the longitudinal record.  *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) (rejecting the argument that the ALJ attempted to "play doctor" because "it is the ALJ's responsibility to formulate an RFC that is based on the record as a whole," and the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC"); *Lopez v. Saul*, No. 1:19-CV-00971-BAM, 2020 WL 6526197, at *8 (E.D. Cal. Nov. 5, 2020) ("Plaintiff's additional argument that the ALJ 'played doctor' by interpreting the medical evidence . . . is likewise without merit.  Contrary to Plaintiff's

contention, it is within the ALJ's province to synthesize the medical evidence.") (cleaned up); *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work.").[8]

### B. Plaintiff's Symptom Testimony.

An ALJ must engage in a two-step analysis when evaluating symptom testimony. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Garrison*, 759 F.3d at 1014. The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving clear and convincing reasons. *Id.*[9]

Plaintiff testified about her symptoms and daily activities at the administrative hearing. Tr. 37-62. She stated that she has severe low back pain and sciatica, which radiates into the hips and extends all the way down to the toes. She experiences abnormal sensation and some loss of control in her lower extremities. She can walk for 10-15 minutes, sit for 30 minutes, and lift 15 pounds. She has debilitating headaches that last a couple hours about two to three times a week. On a typical day, she has coffee, takes medications, takes a nap, cooks an easy lunch and dinner, and watches television. She is unable to do housework but can go alone to the grocery store. Her hobbies include art journaling, computer games, and puzzles. Tr. 47-54.

---

[8] In determining Plaintiff's RFC, the ALJ did not adopt a single medical source opinion and instead assessed specific limitations on a function-by-function basis best supported by the evidence as a whole. Tr. 18-27.

[9] Defendant contests the Ninth Circuit's "clear and convincing reasons" standard, arguing that it conflicts with the substantial evidence standard in 42 U.S.C. § 405(g). Doc. 14 at 6 n.6. But the Ninth Circuit has held that this position "lacks any support in precedent and must be rejected." *Garrison*, 759 F.3d at 1015 n.18.

The ALJ followed the required two-step process for evaluating Plaintiff's testimony. Tr. 18-20. The ALJ first found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms. Tr. 20. The ALJ also found, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. *Id.* The ALJ did not completely reject Plaintiff's testimony about the severity of her symptoms, but instead found that the symptoms did not render her unable to engage in sedentary work with restrictions. *Id.*

The ALJ provided a detailed review of the medical evidence over seven single-spaced pages. Tr. 20-26. The review covered nearly all the medical evidence, from Plaintiff's surgery in February 2014 to the consultative exam in November 2021. *See* Tr. 423-1165 (Exs. 1F-36F). The ALJ noted that some medical records support Plaintiff's claim of severe headaches, chronic pain and spasms in the lower back and legs, and the need for strong pain medications, injections, and a spinal cord stimulator. Tr. 20-26. The ALJ also noted, however, that some medical records reflect normal to mild clinical findings, effective pain management, and a higher level of functioning than Plaintiff's testimony suggests. *Id.* After this detailed recounting of the medical evidence, the ALJ explained:

> The claimant's statements and allegations about the intensity, persistence, and limiting effects of her symptoms are not consistent with the longitudinal evidence of record. As summarized above, the evidence of record shows the claimant underwent surgical removal of a Tarlov cyst in February 2014 (Exhibits 1F, 2F, 35F). She reported improvement in her pain symptoms after the surgery.
>
> Indeed, a month after surgery she discussed returning to work as a flight attendant with her primary care provider (see Exhibit 31F, pp. 5-6). Her primary care provider recommended following up with her neurosurgeon about restrictions and returning to work (id.). However, she did not follow up with her neurosurgeon until two years later in March 2016 (Exhibit 8F, p. 1). It is unclear why the claimant did not follow up with her neurosurgeon regarding her return to work.

14

> The record shows conservative, non-surgical pain management treatment over the following five years (Exhibits 4F, 7F, 14F, 15F, 17F, 25F). The claimant was treated with medications including oxycodone, hydrocodone, Lyrica (pregabalin), Flexeril (cyclobenzaprine), and Robaxin (methocarbamol) (id.). The claimant changed pain management providers multiple times during this period. It is notable that the pain management records show discontinuation of opioids at least twice due to violations of her opioid contract (see Exhibit 4F, pp. 76-82; Exhibit 7F, p. 1).
>
> In September 2019, the claimant received a spinal cord stimulator (Exhibit 18F, p. 6). She has reported improvement in her pain with the stimulator. Indeed, in February 2021 she rated her pain as 2 to 5 out of 10 (Exhibit 34F, p. 3). The claimant has repeatedly complained of weakness and abnormal sensation in the lower extremities. But the objective testing does not support her complaints. In October 2014, an EMG of the lower extremities showed no evidence for lumbar radiculopathy and peripheral neuropathy (Exhibit 4F, pp. 1-8). In November 2020, an EMG of the left upper and right lower extremities was negative (Exhibit 34F, p. 14). The physical examinations have varied over the relevant time period, which is expected for such an extended period that includes surgical interventions. The physical examinations have repeatedly shown abnormalities such as lumbar paraspinal muscle spasms and tenderness and painful range of motion of the spine but have also consistently shown an independent gait, grossly normal muscle strength in the bilateral lower extremities, grossly normal sensation, normal coordination and normal balance (see Exhibit 4F, pp. 20-21; Exhibit 6F, p. 14; Exhibit 9F, p. 6; Exhibit 14F, pp. 3, 10; Exhibit 18F, p. 3; Exhibit 19F, pp. 2, 4; Exhibit 29F, pp. 2-3; Exhibit 30F, pp. 4-5; Exhibit 33F, p. 22; Exhibit 34F, p. 4; Exhibit 36F, p. 4).
>
> The claimant has also received conservative treatment for headaches. She has been treated with medications including Imitrex and Topamax, which she reported provided good relief of her headaches (see Exhibit 12F, p. 13; Exhibit 23F, p. 49; Exhibit 34F, p. 25). She has also received Botox injections, which she reported decreased the frequency of her headaches (see Exhibit 30F, p. 3; Exhibit 34F, p. 6). Indeed, in October 2020 she reported her headaches had decreased to only once a week (Exhibit 30F, p. 3).

Tr. 26-27; *see also* Doc. 14 at 6-12.

After providing this explanation for discounting Plaintiff's symptom testimony, the ALJ found that she had the RFC to perform sedentary work with restrictions:

>In short, the evidence of record supports a finding the claimant retains the [RFC] – her maximum remaining capacity for work on a sustained basis – to perform work at the sedentary range of work, as outlined above. To accommodate the claimant's impairments, the [RFC] is reduced accordingly to the extent the evidence of record supports such limitations. The [RFC] outlined above incorporates the consideration of factors that would potentially aggravate the claimant's existing conditions and/or associated functional loss as well as potential side effects of treatment, and incorporates precautionary limitations due to these conditions. In regard to the claimant's Tarlov cyst, the exertional and positional limitations incorporates the consideration that any further increase in weight and/or more frequent positional exposure would potentially cause further degeneration and subsequent pain and dysfunction. For the reasons stated, I find the claimant has the ability to perform the [RFC] outlined above.

Tr. 27.

Because the ALJ found no evidence of malingering, she could discount Plaintiff's testimony only by making "specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). The ALJ's findings must be "sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Thomas*, 278 F.3d at 958.

The ALJ met this standard. She carefully reviewed Plaintiff's lengthy medical history and found that her symptom testimony does not entirely comport with the numerous medical records reflecting normal to mild clinical findings and effective pain management treatment. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases.") (citations omitted). The ALJ specifically found that Plaintiff's functional limitations were consistent with an RFC for sedentary work with restrictions. Although reasonable minds could reach different conclusions from Plaintiff's lengthy and detailed medical history, the Court "may not engage in second-guessing" where "the ALJ's credibility finding is supported by substantial evidence in the record[.]"

*Thomas*, 278 F.3d at 959; *see Tamera H. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-1428-MO, 2024 WL 68354, at *3 (D. Or. Jan. 5, 2024) ("Plaintiff is correct, that *absence* of corroborating objective medical evidence is not a clear and convincing reason to discount subjective symptom testimony about pain; *conflict* with objective medical evidence is, however. *Smartt*, 53 F.4th at 498. And here, the ALJ relied on several inconsistencies between Plaintiff's testimony and the record – all valid reasons to discount her testimony about the extent of her pain and physical limitations. . . . Against that backdrop, Plaintiff has not established error by simply advancing a different interpretation of the evidence[.]").

Plaintiff asserts that the ALJ merely summarized some of the medical evidence without connecting that discussion to any specific symptom testimony. Docs. 12 at 18, 15 at 7. But the ALJ specifically addressed Plaintiff's reports of chronic pain and headaches and her testimony that she can walk only for 10-15 minutes and sit for 30 minutes. Tr. 19. What is more, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755; *see Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (cleaned up). Having carefully reviewed the ALJ's decision and the record as a whole, the Court cannot conclude that the ALJ arbitrarily discredited Plaintiff's symptom testimony. *See Thomas*, 278 F.3d at 958.

Plaintiff further asserts that the ALJ failed to explain how normal clinical findings (normal strength, coordination, and balance) "cancelled out" abnormal findings (muscle spasms and painful range of motion of the spine). Doc. 12 at 21. But the ALJ did not conclude that any abnormal clinical finding had been "cancelled out." Instead, the ALJ properly considered the medical evidence as a whole in making her credibility and RFC determinations. *See Fuentes v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00147-PHX-JJT, 2023 WL 5013109, at *4 (D. Ariz. Aug. 7, 2023) ("Plaintiff argues that the ALJ erred by failing to specifically discuss why the cited findings 'cancelled out' other findings that supported Dr. Wolff's assessments. However, 'the ALJ does not need to discuss every

17

piece of evidence.' Instead, the ALJ was required to explain why he found Dr. Wolff's assessments inconsistent with the other medical evidence in a manner supported by substantial evidence, which he did.") (citation omitted).[10]

**V. Conclusion.**

Having carefully reviewed the ALJ's decision and the record as a whole, the Court finds that the decision is supported by substantial evidence and not based on harmful legal error. The decision therefore will be affirmed.[11]

**IT IS ORDERED:**

1. The final decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits (Tr. 1-6, 10-36) is **affirmed**.

2. The Clerk of Court shall enter judgment accordingly.

Dated this 2nd day of February, 2024.

David G. Campbell
Senior United States District Judge

---

[10] Defendant also notes, correctly, that Plaintiff's muscle spasms were often described as "mild" and she repeatedly had only "slightly" decreased range of motion of the spine. Doc. 14 at 13 (citations omitted).

[11] Defendant does not defend the ALJ's finding that Plaintiff's pain management treatment was conservative. Doc. 14 at 14; *see* Doc. 12 at 18-20; Tr. 20, 27. Any error in this regard is harmless because the Court can confidently conclude from the record that the ALJ would have reached the same result absent the error. *See Molina*, 674 F.3d at 1115; *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015); *Acevedo v. Berryhill*, No. ED CV 17-00775 AFM, 2018 WL 1155972, at *5 (C.D. Cal. Mar. 1, 2018) ("Even assuming the ALJ improperly characterized Plaintiff's treatment as conservative, any error was harmless in light of the other clear and convincing reasons provided in his decision."); *Regina L. v. Kijakazi*, No. 8:23-CV-00152-PD, 2023 WL 6926204, at *4 (C.D. Cal. Oct. 19, 2023) ("The ALJ also discounted Plaintiff's subjective complaints because . . . she generally received conservative treatment for her back and neck in the form of pain medication, physical therapy, and injections. . . . However, any error is harmless because the ALJ provided two other legitimate reasons, supported by substantial evidence, for discounting Plaintiff's testimony.").

18